IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES ex rel. STROM,<br><br>    Plaintiff,<br><br>    v.<br><br>SCIOS, INC. and JOHNSON & JOHNSON,<br><br>    Defendants. | No. C05-3004 CRB (JSC)<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR RECONSIDERATION (Dkt. No. 138)** |

Now pending before the Court is Plaintiff's motion for reconsideration of the Court's September 21, 2011 Order finding that communications made in a March 2002 telephone call between various Scios, Inc. ("Scios") employees and Scios outside consultant Dr. Lipicky are protected by the attorney-client privilege. Plaintiff contends that Dr. Lipicky's deposition testimony obtained after the Court's ruling demonstrates that the communications are not protected by the privilege.

**A.    Leave to file**

As a preliminary matter, the Court must determine whether to grant Plaintiff leave to seek reconsideration of the Order. Civil Local Rule 7-9 provides that a party must first seek leave to file a motion for reconsideration and that to be granted such leave the party must show

> [t]hat at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did n

Civ. L.R. 7-9(b)(1). While Plaintiff has not formally sought such leave, the Court interprets the October 5, 2011 joint letter brief as a request for leave to seek reconsideration on the ground of a material difference of fact; namely, the subsequent deposition of Dr. Lipicky. Interpreting the letter in this manner is consistent with the Court's standing order and its intent to have discovery disputes resolved as efficiently and with as little cost to the parties as is reasonably possible.

While the taking of Dr. Lipicky's deposition creates a potentially material difference in fact, Defendants nonetheless argue that Plaintiff has not demonstrated that it has exercised the required due diligence because Plaintiff declined the Court's offer to defer any ruling on the privilege issue until after Dr. Lipicky's deposition. Plaintiff, however, requested a ruling before Dr. Lipicky's deposition because it understood that due to Dr. Lipicky's health he would not be available for a second deposition should Plaintiff prevail on its privilege argument; in other words, it needed to know prior to his deposition whether he could be required to answer questions regarding the content of the March 2002 telephone call. Plaintiff does not seek to retake Dr. Lipicky's deposition as a result of his testimony; instead, it seeks to reopen the depositions of others who refused to testify as to the content of the March 2002 telephone call on the basis of attorney-client privilege. Accordingly, the Court grants Plaintiff leave to seek reconsideration of the September 21, 2011 order in light of Dr. Lipicky's subsequent testimony.

**B.     Request for Reconsideration**

The application of the attorney-client privilege in a federal question case is governed by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010) (internal quotation marks and citation omitted). The only requirement at issue on Plaintiff's motion for reconsideration is

2

the fifth element--the identity of the "client."[1]  In Upjohn Co. v. United States, 449 U.S. 383 (1981), the United States Supreme Court held that for corporations (such as Scios), the attorney-client privilege extends to communications with counsel made by all of the corporation's employees, not just upper management or those from a "control group."  Id. at 394-95.

In In Re Bieter Co., 16 F.3d 929 (8th Cir. 1994), the Eighth Circuit held further that "an independent consultant can be a representative of the client for the purpose of applying the attorney-client privilege."  Id. at 936.  Indeed, "it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors."  Id. at 937.  The court's fear was that "too narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess just the very sort of information that the privilege envisions flowing most freely."  Id. at 938.  The court went hold to hold that the privilege applied to communications between counsel and the outside consultant at issue there because he was retained

> "to provide advice and guidance regarding commercial and retail development based upon [his] knowledge of commercial and retail business in the State of Minnesota," just as one would retain an outside accountant for her knowledge of, say, the proper accounting practices and taxation concerns of partnerships. There is no principled basis to distinguish [the Bieter consultant's] role from that of an employee, and his involvement in the subject of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentiality.

Id. at 938.

The Ninth Circuit found the reasoning of Bieter persuasive and adopted its principles in Graf, 610 F.3d at 1159.

---

[1] Plaintiff's October 5, 2011 letter notes that Dr. Lipicky did not understand that Jane Moffitt was an attorney or that his role was to provide advice to help Scios' attorneys provide Scios with legal advice.  (Dkt. No. 138 at 2.)  It is unclear whether Plaintiff is arguing that the Court should reconsider its order because this testimony means that the March 2002 telephone conference was not related to legal advice, a different question from whether Dr. Lipicky qualifies as a representative of Scios.  In any event, as Dr. Lipicky could not even remember with whom he worked at Scios or the conversation itself, see *infra* at 5, the Court does not find his testimony persuasive on this point.

3

1    Applying this caselaw, the Court previously found that Dr. Lipicky qualified as the
2 functional equivalent of an employee for the purpose of the attorney-client privilege.

> The written consultant agreement governing the relationship between Scios, Inc. ("Scios") and Dr. Lipicky at the time of the communications at issue required Dr. Lipicky to keep confidential "knowledge and information pertaining to Scios which is confidential" and that such confidential information included Dr. Lipicky's work product under the consulting agreement. (Dkt. No. 128-1 ¶ 9.) Further, the subject matter for which Defendants claim privilege was a legal matter--FDA regulatory requirements and Netrecor's label--and a participant in the call was Jane Moffitt, an attorney and Defendants' Vice President of Regulatory Affairs. Indeed, pursuant to the relevant consulting agreement Ms. Moffitt was responsible for Dr. Lipicky's work assignments and Dr. Lipicky was required to report to Ms. Moffitt. (Id. ¶ 5.)
>
> . . . .
>
> Here, the record supports a finding that during the three years that Dr. Lipicky served as a paid consultant to Scios, Scios shared information with him about Scios and its products to enable Dr. Lipicky to assist Scios with various decisions. Some of those decisions were business matters, such as how to design a clinical trial, and some were legal, such as FDA regulations in connection with product labels. Due to Dr. Lipicky's specialized knowledge and his knowledge of Scios he was therefore the type of nonemployee who "posses[es] the very sort of information that the privilege envisions flowing most freely." To put it another way, it makes sense that Scios' attorneys would wish to consult with someone with knowledge of Scios and FDA regulations "to discover the information they need to successfully advocate on behalf of their client." Memry Corp., 2007 WL 39373 at *3. Dr. Lipicky's role at Scios "was that of a functional employee." Graf, 610 F.3d at 1159.

(Dkt. No. 134 at 2-3.)

19    Plaintiff seeks reconsideration on the ground that Dr. Lipicky's subsequent deposition
20 testimony demonstrates "Scios shared no information with him about the company and its
21 products, and that he had no pertinent knowledge of Scios or Natrecor that came from any
22 source other than his work at the FDA." (Dkt. No. 138 at 2.)  In particular, Plaintiff
23 highlights Dr. Lipicky's testimony that when he provided advice to Scios it was based on his
24 knowledge from working at the FDA and not "on anything else."  (Lipicky Depo. at 100.)
25 He further testified that he did not think that Scios provided any new information to him,
26 although he could not explicitly recall.  (Id. at 131.)  Plaintiff argues, in effect, that it was as
27 if Dr. Lipicky was still a FDA employee and was merely giving advice as any FDA
28 employee could do.

4

1    The Court has reviewed Dr. Lipicky's deposition in its entirety and declines to
2 reconsider its earlier decision.  Dr. Lipicky repeatedly testified that he remembered very little
3 about his consulting work for Scios.  He did not remember the March 2002 telephone
4 conference;  indeed, he did not remember whether he participated in any telephone calls with
5 Scios. (Lipicky Depo. at 90.)  He could not remember the subject matter of any of the
6 telephone calls that he might have had with Scios during his Scios consultancy.  (Id. at 130-
7 31.)  He did not remember who he worked with at Scios, except for the name of one
8 employee who was on the telephone line at least one time.  (Id. at 131.)  Thus, it makes sense
9 that he would also not remember what, if any, information Scios officials conveyed to him
10 during his relationship with Scios.  Moreover, Jane Moffitt has stated under oath that she and
11 others at Scios "shared with Dr. Lipicky confidential information about Scios, its business
12 and its products as part of an ongoing relationship with Dr. Lipicky where he provided
13 advice and guidance on those aspects of Scios' business that related to FDA rules and
14 decisions."  (Dkt. No. 128-1 at ¶ 14.)  Finally, it defies common sense that Dr. Lipicky's
15 advice was not based, at least in part, on information conveyed to him by Scios.  As he
16 himself testified, in order to obtain his advice Scios had to tell him "what it is that's going
17 on, what the issue is." (Lipicky Depo. at 132.)

18    Plaintiff also argues that Dr. Lipicky does not qualify as a representative of Scios for
19 the purpose of the attorney client privilege because he testified that he had other clients in
20 addition to Scios, his work was done almost exclusively by telephone, and he did not have
21 any authority to act on behalf of Scios or manage any Scios employees.  The Court, however,
22 does not read the caselaw, including Graf, as limiting the application of the privilege to
23 outside consultants who work full time at the physical headquarters of the corporation.
24 Rather, the dispositive question is the consultant's relationship to the company and whether
25 by virtue of that relationship he possesses information about the company that would assist
26 the company's attorneys in rendering legal advice.  For example, the Bieter court analogized
27 the outside consultant there--whose communications were protected by the privilege--to an
28 outside accountant retained for her knowledge of the proper accounting practices and

5

taxation concerns of partnerships. 16 F.3d at 938. An outside accountant has other clients, works from her own office, and does not manage her client/corporation's employees; yet, the accountant by virtue of her specialized knowledge of accounting rules and knowledge of the client/corporation is precisely "the sort of person with whom a lawyer would wish to confer confidentially." Graf, 610 F.3d at 1158.

Finally, it should be noted that the privilege does not apply to Dr. Lipicky's own views or information developed without any confidential attorney-client information from Scios; indeed, he testified at length and without objection (at least any objection other than as to form) as to Natrecor's indications and its label. Thus, this is not a case where a corporation is attempting to use a consulting agreement with a former FDA official to prevent the official from giving testimony as to his views as a FDA official or what he communicated to the corporation when he was so employed.

## CONCLUSION

For the reasons explained above, Plaintiff is granted leave to file a request for reconsideration, but the request for reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: October 12, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE